## Heman N. Strong *vs.* Farmers' and Mechanics' Bank of Michigan.

When a billholder presents, at one time, to a Bank, for redemption, several bill of the denomination of $5, it is competent for the Bank, by virtue of the Act of Congress, approved February 23, 1853, entitled, "An Act amendatory of existing laws, relative to the half dollars," etc., to tender the whole sum so presented, in half dollars of the coin issued under said Act.

Case reserved from Wayne Circuit.

On the 29th day of September, A. D. 1855, the plaintiff, being the holder of thirty of the circulating bills of the Farmers' and Mechanics' Bank of Michigan, each for the sum of five dollars, and payable on demand to the bearer, presented said bills at one and the same time, at the counter of the Bank in the City of Detroit, and demanded the sum of one hundred and fifty dollars in payment and redemption thereof. Whereupon, the Bank without delay, tendered and offered to pay the plaintiff in redemption of said bills, three hundred pieces of silver coin of the United States, known as half dollars, coined by authority of the United States, and issued under the first section of the Act entitled, "*An Act amendatory of existing laws relative to the half dollar, quarter dollar, dime, and half dime,*" approved February 21, 1853, which said offer and tender was refused by the plaintiff, who then brought this action on said circulating notes. The defendant gave a special notice of the foregoing facts, claiming that they constituted a tender. To this notice the plaintiff demurred, to which there was a joinder, and the Circuit

Judge reserved the following question : " Whether the said tender and offer of payment were sufficient in law, and whether the demurrer, put in by the plaintiff to the notice of the defendant's setting forth the facts of such offer and tender, ought to be sustained ?" The first section of the Act of Congress of February, 1853, provides for the weight of silver coins to be issued after June 1, 1853. The *second* section is in these words : " Sec. 2. *And be it further enacted*, That the silver coins issued in conformity with the above section, shall be legal tender in payment of debts for all sums not exceeding five dollars."

*G. V. N. Lothrop and J. V. Campbell*, for defendants.

The word " debts " in the Act of Congress, has the same meaning as *causes of action*. A person cannot unite several distinct causes of action, and thereby establish a rule for the aggregate which he could not claim for any single cause of action. Each one of these circulating notes in this case was a distinct cause of action ; separate suits could be brought on each one. The holder could undoubtedly present each one of these notes separately, and demand redemption of them. Can a man change all this, by simply putting all the notes into one package, and demanding redemption of all at once ? Suppose a man issues a number of promissory notes to various persons, each not exceeding the amount of five dollars. Suppose, further, they all fall into one person's hands, cannot the debtor make a separate tender on each ? Can the creditor insist that he will not receive payment of one, without all are paid ? Or can he insist on a mode of payment for the aggregate, which he would have no right to on the individual notes. There can be no difference, we think, between such a case and the one now before this Court. We will suppose

that silver was the only legal tender for sums of five dollars and under; now, should it happen that silver was worth more than gold, it is clear that the holder of these notes could compel a redemption in silver. And it would be hard, if the holder could compel the Bank to stand ready to redeem in this mode, and yet could avoid accepting it when tendered. There would be no mutuality about it. It is clear that there are as many debts as there are notes. In an action, if the declaration is special, each must be counted on; if the common counts are used, each must be set out in the bill of particulars, and each proven at the trial; each may have a separate defence, or, rather, the defence to one or more may have no necessary connection with the rest. Should the holder desire to protest such paper, he must protest each note separately. And it may be well to remark, that each note is separately countersigned by the State Treasurer.

The obligation of the Bank, by its charter, is to pay its notes, on demand, in "the lawful currency of the United States." (*Laws* 1849, *p.* 123, *sec.* 3.) We suppose this means, any currency which is a lawful tender for any note presented for payment. The Bank issues its notes with reference to this obligation. If silver coin is a lawful tender for all notes not exceeding five dollars, the Bank makes its promise with reference to that; and the right of the holder must be governed by the same considerations. In his hands, a single note of five dollars certainly represents only a right to that amount in silver; for that right is founded on the written promise of the note, which the law construes into an obligation to pay in a certain mode. Now, when a holder has got two five dollar notes, he does not hold *one* promise to pay ten dollars, but *two* promises, each to pay five dollars. And the lawful mode of discharge in the two cases may be different. And, as a holder in the former case could not be compelled to accept the mode of discharge which was appropriate only to

the latter case, so a holder in the latter case is not entitled to demand a mode which belongs to the former case. Hence, we contend, that unless the possession, by the plaintiff, of the thirty notes in question, converted them into *one* promise to pay one hundred and fifty dollars, the tender made by the defendants was good. For, if the notes remained as they were when issued—each an independent promise, each a distinct right—then the plaintiff held thirty promises, instead of one : thirty debts, instead of one ; and as no one exceeded five dollars, the defendants had a right to tender silver in payment.

*J. M. Howard,* for plaintiff.

It is plain that a debt exceeding five dollars, cannot be paid in the coins here tendered ; for it is a maxim, "*inclusio minus exclusio alterius.*" : The question then is, what was the " sum" designated by the creditor, at the time mentioned in the declaration. There would seem to be but one answer, and that is, that the *sum* demanded was $150, although it was made up of thirty separate notes. There was but one demand, not thirty. The thirty notes were merely evidence of thirty items of indebtedness, which, in the hands of one creditor, became a single indebtedness of $150, and this was the " debt" then due to him from the bank. Had he demanded them one by one, the tender would, doubtless, have been good ; but as he chose to consolidate them into *one debt*, he was not bound to accept the baser silver coin. It is plain from the pleadings, that the defendants offered to pay all the bills as *one debt*, not as thirty; and that they were demanded as one debt, not as thirty. Both parties treated them as one debt ; and it is submitted, that the language of the Act, "*tenders in payment of debts for all sums,*" etc., must be interpreted according to the popular meaning attached to
45

them.    The word "*sum*" must be understood to be the amount due the holder at the time of the demand, as evidenced by the bills presented.   A creditor, presenting $1000 in notes of $10 each, would not be likely to demand payment of *one hundred debts;* he, as well as the banker, would treat them all as one debt.   A different construction would give an advantage to the holder of notes for $10 each, over one who holds notes for $5 each, though both might hold the same amount, and present their bills together and at the same time ; and this without any apparent reason whatever.   By the Act of 18th January, 1837, Section 9 (5 *U. S. Stat. at Large, p.* 137), the half dollar was required to contain 206 1-4 grains, while by the Act in question, it is to contain only 192 grains ; and the smaller coin in proportion.   It is notorious, that at the time the Act of 1853 was passed, there was a scarcity of silver coin in the United States, and the Act was passed to prevent the drain of it to Europe.   In order to give this reduced coin currency among our own people, it was made a tender for *small debts*, but not for large ones, the loss to the creditor in the latter case being too serious.    If such were the occasion and policy of the Act, it is quite clear that the construction contended for by the defendant completely perverts its object, and causes it to work inequality and injustice.   It tends also to drive silver coin out of circulation, and to substitute for it bank notes of a small denomination. (1 *Kent's Com.*, 462, *and cases there cited.*)

The cause was decided orally.   The Court held that it was competent for the Bank to make the tender in the manner proposed, and on the 14th March, 1856, ordered the following judgment to be entered therein :

"The question reserved in this cause by the Circuit Court for the County of Wayne, for the opinion of this Court, having been argued by counsel for the respective parties, it is ordered that it be certified to the said Circuit Court

for the County of Wayne, as the opinion of this Court, that the said defendant is entitled to judgment in this cause."

PRATT, P. J., and WING, MARTIN, COPELAND and GREEN, J., J., concurred in this opinion.

JOHNSON, DOUGLASS and BACON, J. J., dissented.

SHERLOCK, plaintiff in error, vs. THAYER, defendant in error.

Where rent is made payable weekly, or at other stated intervals, in advance, the tenant has the whole of the first day of each succeeding week, or other interval of time, in which to make the payment.

Error to the Wayne Circuit Court.

Plaintiff below sued for damages for the forcible detainer of certain premises. It was proved that Sherlock was the owner of the premises, and leased them for six months next ensuing the 10th day of April, 1854, for a certain weekly rent, "*payable weekly in advance;*" that April 10th, 1854, fell on Monday; that the rent was paid for and up to the week ending Monday, July 3d; that on Tuesday, July 4th, the rent for the week to the ensuing Monday being unpaid, Sherlock took possession of the premises, no one being therein at the time, and retained them, etc. The evidence was, that the taking was peaceable, etc.

The Court charged the jury that Thayer (the lessee) had the entire of the 4th of July to pay the rent, and that the